UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DINU RASCOL,

Petitioner,

v.

KEVIN RAYCRAFT, et al.,

Respondents.
_______________________________/

Case No. 2:26-cv-13534

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER**
**DENYING PETITIONER'S MOTIONS FOR**
**A PRELIMINARY INJUNCTION [3] AND TO ENFORCE JUDGMENT [8]**

On September 17, 2026, Dinu Rascol petitioned for a writ of habeas corpus under 28 U.S.C. § 2441 and named various Government officials and agencies tasked with enforcing immigration laws and the custodian of the jail housing him as Respondents. ECF No. 1. Rascol subsequently filed an emergency motion for a temporary restraining order and preliminary injunction as well as a motion to enforce a judgment based on an opinion very recently issued by the U.S. Court of Appeals for the First Circuit. The Government opposed both motions. ECF Nos. 6, 10. The Court issued a case management order, set a briefing schedule, and ordered the Government not to deport Rascol until the Court resolved the emergency motions. ECF No. 7. For the following reasons, the Court will deny Rascol's emergency motions for a preliminary injunction and to enforce judgment. The Court will also dismiss for lack of jurisdiction Rascol's petition to the extent it seeks to challenge his final order of removal and receive additional procedures.

## BACKGROUND

Rascol is a native and citizen of Romania and a member of the Roma ethnic group. ECF No. 1, PageID.2. He has resided in the United States legally after an immigration judge granted him withholding of removal in 2017 due to fear of persecution based on his ethnicity. ECF No. 1-2, PageID.25. On September 10, 2026, Rascol alleged Immigration and Customs Enforcement (ICE) officers called him under the guise of verifying information about an appointment he had with the agency. ECF No. 1, PageID.5; ECF No. 8, PageID.157. Agents entered Rascol's home and arrested him, allegedly without a warrant. *Id.* After the arrest, Rascol claimed that ICE agents verbally informed him that they intended to deport him to the Republic of Rwanda. *Id.* Rascol denied receiving either a formal written notice of removal that identified Rwanda as the intended country of removal, or an opportunity to consult counsel, gather evidence, and present a defense to obtain a withholding of removal or Convention Against Torture (CAT) and Foreign Affairs Reform and Restructuring Act (FARRA) protections. ECF No. 1, PageID.6. Rascol alleged that he has no ties to Rwanda and fears persecution on account of his Roma ethnicity. *Id.* Rascol is currently held at the St. Clair County Jail near Port Huron, Michigan. *Id.* at PageID.4.

On September 17, 2026, Dinu Rascol petitioned for a writ of habeas corpus under 28 U.S.C. § 2441 and named various Government officials and agencies as well as the custodian of the jail housing him as Respondents. ECF No. 1. Rascol subsequently filed an emergency motion for a temporary restraining order and

preliminary injunction and asked the Court to (1) enjoin the Respondents from removing him to Rwanda or any other third country; (2) require Respondents to provide notice of any proposed third country of removal; and (3) provide him with a meaningful opportunity to seek a withholding of removal or CAT/FARRA protections. ECF No. 3, PageID.69. The issuance of the First Circuit's decision in *D.V.D. v. U.S. Dep't of Homeland* Sec., No. 26-1212, 2026 WL 2797801 (1st. Cir. Sep. 18, 2026) the next day presumably prompted Rascol to file an emergency motion to enforce judgment. ECF No. 8. The motion asked for much of the same relief that was requested in his first emergency motion. *Compare* ECF No. 8, PageID.156–157 *with* ECF No. 3, PageID.69.[1] After Rascol filed his emergency motions, the Court issued a case management order that set a briefing schedule and ordered Respondents not to deport Rascol until the Court decided the emergency motions. ECF No. 7, PageID.153–154.

For the following reasons, the Court will deny Rascol's emergency motions for a preliminary injunction and to enforce judgment.

---

[1] Rascol's emergency motion to enforce judgment, despite its title, requested the same injunctive relief as his first motion and cited Federal Rule of Civil Procedure 65, which governs temporary restraining orders and preliminary injunctions. *See* ECF No. 8, PageID.156. Given that the First Circuit's opinion in *D.V.D. v. United States Department of Homeland Security*, No. 26-1212, 2026 WL 2797801 (1st. Cir. Sep. 18, 2026), is the only significant development to have occurred between Rascol's filing of the two emergency motions, the Court will treat Rascol's second emergency motion as also seeking injunctive relief instead of a petition as to enforce a judgment.

## DISCUSSION

Rascol's emergency motions for injunctive relief present two issues: whether the Court has jurisdiction to (1) hear Rascol's motion to enjoin his removal to Rwanda or any other third-country; and (2) enjoin the Government from removing Rascol to Rwanda without giving him the opportunity to obtain withholding of removal or CAT/FARRA protections. The Court will address each issue below. In short, the Court lacks jurisdiction to issue an injunction to stay Rascol's final order of removal and provide him with additional procedural relief.

I. Jurisdiction to Challenge Removal Order

Respondents asserted that the Court lacks jurisdiction to stay Rascol's final order of removal, ECF No. 6, PageID.120–123, and the Court agrees. Federal district courts are courts of limited jurisdiction and only have jurisdiction as Congress may confer by statute. *Goldsmith v. Sutherland*, 426 F.2d 1395, 1398 (6th Cir. 1970) (citation omitted). Relevant here, Congress stripped district courts of their jurisdiction over challenges to the enforcement of long-standing removal orders under the REAL ID Act of 2005. *Hamama v. Adducci*, 912 F.3d 869, 874–75 (6th Cir. 2018) (citing 8 U.S.C. § 1252(g)). Section 1252(g) of Title 8 provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). Rather, the REAL ID Act provided an alternate and exclusive avenue of relief: a petition for review filed with the court of appeals in the circuit where the immigration judge completed the proceedings. 8 U.S.C. § 1252(a)(2)(D), (a)(5). Congress made clear that the court of appeals is the exclusive forum for challenging final orders of removal. *See Elgharib v. Napolitano*, 600 F.3d 597, 600 (6th Cir. 2010) ("In the REAL ID Act, Congress sought to channel judicial review of an alien's claims related to his or her final order of removal through a petition for review at the court of appeals."). That pronouncement includes habeas challenges made under 28 U.S.C. § 2241. 8 U.S.C. § 1252(a)(5). In short, "[t]he REAL ID Act of 2005 clearly eliminated a habeas petition as a means for judicial review of a removal order." *Muka v. Baker*, 559 F.3d 480, 483 (6th Cir. 2009) (quoting *Jaber v. Gonzales*, 486 F.3d 223, 230 (6th Cir. 2007)); *see also Elia v. Gonzales*, 431 F.3d 268, 273 n.5 (6th Cir. 2005) (noting the REAL ID Act limits habeas relief).

The Court lacks jurisdiction over Rascol's emergency motions to the extent Rascol seeks to challenge the validity of his final order of removal. The parties do not dispute that Rascol is subject to a final order of removal from 2017 and was granted withholding of removal. ECF No. 1, PageID.5; ECF No. 6-3, PageID.139. While Rascol rejected Respondents' claim that he challenged his 2017 order of final removal, ECF No. 9, PageID.255–256, his petition and emergency motions prove the opposite. Rascol first requested the Court to issue a writ of habeas corpus "directing Respondents to show cause [as to] why the writ should not be granted and why Petitioner should not be released or why removal should not be enjoined." ECF No. 1,

PageID.22. Rascol made a similar request in his first emergency motion by asking the Court to enjoin "Respondents from removing [Rascol] to Rwanda or any other third country." ECF No. 3, PageID.69. Rascol repeated the request in his emergency motion to enforce judgment by asking the Court to "enjoin[] Respondents from removing [Rascol]." ECF No. 8, PageID.156.

Rascol's filings make clear he sought to enjoin his removal from the United States—essentially, he challenged his 2017 final removal order. As the Sixth Circuit has recognized, Congress stripped district courts of jurisdiction to review those types of claims through the REAL ID Act. *Hamama*, 912 F.3d at 875 (citing 8 U.S.C. § 1252(g)). Further, Rascol sought habeas relief under 28 U.S.C. § 2241, which the REAL ID Act explicitly addressed when it gave courts of appeals exclusive jurisdiction: "[n]otwithstanding any other provision of law, . . . *including section 2241 of Title 28*, . . . a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5) (emphasis added); *see also Muka*, 559 F.3d at 483. Accordingly, the Court must dismiss Rascol's petition and deny his emergency motions to the extent they seek to enjoin his removal as a challenge to the 2017 final removal order.

II. <u>Jurisdiction over Procedural Relief</u>

The second, and more difficult, issue in Rascol's emergency motions for injunctive relief is whether the Court has jurisdiction to issue an injunction that ensures Rascol receives notice of any third country of removal and an adequate

opportunity to seek withholding of removal and CAT/FARRA protection. While there is a split among district courts over the issue, especially in how to interpret the applicable Sixth Circuit caselaw, the Court, for the reasons discussed below, concludes it lacks jurisdiction to grant Rascol an injunction that mandates he receive procedural relief pursuant to his final order of removal.[2]

The most recent principal Sixth Circuit case that interpreted 8 U.S.C. § 1252(g)'s limitation on federal district court jurisdiction over final removal orders is *Hamama v. Adducci*, 912 F.3d 869 (6th Cir. 2018). *Hamama*'s facts are similar, but not identical, to those of the present case. In *Hamama*, ICE attempted to execute longstanding removal orders against Iraqi nationals to Iraq. *Id.* at 872. The Iraqi nationals filed a putative class action habeas petition, along with a motion for a temporary restraining order and/or stay of removal, to challenge their removals on the grounds they did not receive an opportunity to present their arguments of Iraq's changed national conditions. *Id.* at 873.

As an initial matter, the Sixth Circuit noted the Iraqi petitioners' action "was undoubtedly outside the norm for removal proceedings, over which the immigration courts hold exclusive jurisdiction." *Id.* As mentioned above, the norm established by § 1252 requires an alien challenging a final order of removal to file a petition with the circuit court of appeals where the immigration proceedings occurred, not a habeas

[2] When the Supreme Court stayed the First Circuit's decision in *D.V.D*, it asked the parties to brief and argue the exact same jurisdictional question presented here. Oral argument is scheduled for December 2026. *United States Dep't of Homeland Sec. v. D.V.D.*, No. 26-426, 2026 WL 2917860 (U.S. Sep. 29, 2026).

petition filed with the local federal district court. *See id.* at 876. The Sixth Circuit held that ICE's enforcement of a long-standing removal order against the Iraqi petitioners to Iraq fell "squarely" within the Attorney General's decision under § 1252(g) to "execute removal orders" and thus "is not subject to judicial review." *Hamama*, 912 F.3d at 874. Accordingly, § 1252(g) divested the district court of jurisdiction to hear the Iraqi petitioners' claim. *Id.* at 875.

Since then, however, district courts within the Sixth Circuit have disagreed over the applicability of *Hamama* to habeas petitions that challenge the Government's decision to deport an alien to a third country rather than to a country of origin. *See id.* at 872–73. Two recent, non-binding cases within the Sixth Circuit best illustrate the divergence.

The first case, *Dia v. Raycraft*, No. 1:26-cv-1054, 2026 WL 1476507 (W.D. Mich. May 27, 2026) (Jarbou, J.), involved Amadou Dia, a Senegalese national subject to a removal order from 2012 to either Senegal or Gabon. *Id.* at *1. The same immigration judge who issued the removal order also granted Dia withholding of removal to Senegal. *Id.* In September 2025, ICE detained Dia and, after Gabon subsequently refused to issue travel documents, informed him it would deport him to the Republic of Ghana. *Id.* Dia petitioned for a writ of habeas corpus and moved for a temporary restraining order to prevent his removal because he did not have the opportunity to seek CAT protections or demonstrate that he would be persecuted or tortured in Ghana. *Id.*

The district court held that § 1252(g) did not strip it of jurisdiction because claims that challenge removals to a third country go beyond the scope of § 1252(g)'s jurisdictional bar. *Id.* at *2–*5. Specifically, the court reasoned that the challenge to remove an alien to a third country of removal is not a challenge to the "execution" of a valid removal order or the Government's authority to execute it, which § 1252(g) covers. *Id.* at *4. Instead, the court concluded a petitioner's challenge to a third country of removal not listed in the order of removal is a challenge to "the government's failure to go through a process contended to be necessary before the order of removal can validly be executed." *Id.* at *3. Section 1252(g) did not bar such a challenge. *See id.*

The *Dia* court relied extensively on the Supreme Court's decision in *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999). *Reno* is a case that involved an alleged selective enforcement of deportation orders to target members of a politically unpopular group. *Id.* at 473–74. The Supreme Court held that § 1252(g) is a discretion-protecting provision meant to bar judicial review of the Attorney General's discrete acts to commence proceedings, adjudicate cases, and execute removal orders and prevent "deconstruction, fragmentation, and hence prolongation of removal proceedings." *Id.* at 483, 487. Thus, the Supreme Court instructed, district courts should read § 1252(g)'s jurisdictional bar narrowly. *Id.* at 487; *Dia*, 2026 WL 1476507, at *3; *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (citing *Reno*'s narrow interpretation of § 1252(g) approvingly).

The *Dia* court then distinguished *Hamama* because the Sixth Circuit there did not address whether removal to a third country amounted to an execution of the order because, according to the district court, the Iraqi petitioners challenged their removal due to changed conditions in Iraq—the country listed in the final order of removal. *Id.*; *Hamama*, 912 F.3d at 872. Dia challenged his removal to Ghana, a country his final order of removal did not list. *Id.* at *4. The court accordingly held § 1252(g)'s jurisdictional bar did not apply to Dia's petition and would go on to review the merits of his claim and grant a preliminary injunction. *Id.* at *4, *5–*9. Many other district courts across the country have come to the same conclusion as *Dia*. *Id.* at *4 (collecting cases).

The second case, however, *Ojukwu v. Lynch*, No. 4:26-cv-2483, 2026 WL 2886889 (N.D. Ohio Sep. 26, 2026) (Calabrese, J.), reached the opposite conclusion of *Dia*. In *Ojukwu*, ICE sought to remove Ojukwu, a Nigerian citizen illegally residing in the United States, to the same third country as *Dia*: Ghana. *Id.* at *1. Ojukwu petitioned for a writ of habeas corpus and moved for a temporary restraining order to enjoin her removal to allow for an opportunity to present a fear of persecution claim regarding Ghana. *Id.* at *2. The district court denied Ojukwu's motion. It held that "Congress has made clear that the Court does not have jurisdiction over [Ojukwu]'s claims . . . under 28 U.S.C. § 2241." *Id.* at *3 (citing 8 U.S.C. § 1252). The district court reasoned "the immigration laws generally aim 'at protecting the Executive's discretion from the courts—indeed, that can fairly be said to be the[ir] theme." *Id.* (quoting *Reno*, 525 U.S. at 486). And on that basis, the *Ojukwu* court subsequently

dismissed Ojukwu's case.[3] *Id.* at *5; *see also Nkafu v. Lynch*, No. 1:26-cv-827, 2026 WL 2409234, at *4 (S.D. Ohio Aug. 18, 2026) (finding no jurisdiction over a Cameroonian national's § 2241 habeas claim that challenged a final order of removal because she was not afforded an opportunity to express her fear of persecution).

While thorough and well-reasoned, the *Dia* court's distinction of *Hamama* rests on an irrelevant factual distinction. The decision also failed to consider how *Hamama* broadened prior Sixth Circuit case law, namely *Elgharib v. Napolitano*, 600 F.3d 597 (6th Cir. 2010), that interpreted § 1252(g)'s jurisdictional bar after the REAL ID Act. In the Court's view, *Ojukwu's* conclusion and result, based on a rather straightforward analysis, is correct given *Hamama*'s holding.

*Dia* distinguished *Hamama* because *Hamama* did not concern third country removals. But, in the Court's view, a habeas petitioner challenging a final order of

[3] As part of its analysis of Ojukwu's arguments, the court persuasively explained three significant flaws in the First Circuit's *D.V.D.* opinion. First, the court questioned the First Circuit's exercise of jurisdiction over the challenges to third country removals. The First Circuit had held "that a claim directed at DHS's adoption of policies involving identification of a country of removal not contemplated by the removal order does not arise from the decision or action to 'execute' that order." *D.V.D.*, 2026 WL 2797801, at *7. The *Ojukwu* court challenged that conclusion because statutes and regulations provide "alternatives for removal when the country identified in a final order of removal is not available—without requiring an immigration judge to issue a new order of removal that becomes final." *Ojukwu*, 2026 WL 2886889, at *4. Second, the court argued the First Circuit misread *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999), to limit § 1252(g)'s jurisdictional bar to protect only three discrete actions: commence proceedings, adjudicate cases, and execute removals. *Id.* Rather, the court reasoned *Reno* did not place any such narrow restriction on § 1252(g), since the entirety § 1252 clearly established a broad jurisdictional bar. *Id.* Last, the Court cast serious doubt as to whether Federal Rule of Civil Procedure 23(b)(2) permitted certification of the *D.V.D.* class. *Id.*

removal because of changed conditions in their home country (*Hamama*) versus because of fear of persecution or torture in a third country of removal are the same: Both specific habeas challenges are derived from the execution of an order of removal that § 1252(g) stripped district courts of jurisdiction to hear. *See Hamama*, 912 F.3d at 873, 874–75. *Hamama* need not specifically apply to the exact procedural challenge before a district court for its § 1252(g) holding to bar jurisdiction in a differently posed procedural challenge.

The Court's decision here is reinforced by *Hamama*'s broadening of the already-existing Sixth Circuit case law that interprets § 1252(g). *Hamama* relied, in part, upon *Elgharib*. The Sixth Circuit in *Elgharib* was charged, in part, with interpreting § 1252(g) after the REAL ID Act barred the use of habeas claims, including those under § 2241, to challenge a final order of removal in district court. *Id.* at 602 n.3.[4] *Elgharib* held that the addition of the language applying § 1252(g) to habeas claims did not change *Reno*'s narrow interpretation: District courts lack jurisdiction to hear challenges directed at the Attorney General's discrete decision to commence proceedings, adjudicate cases, or execute removal orders. *See id.* at 602–04. In other words, petitioners could no longer use § 2241 as a jurisdictional hook to circumvent § 1252(g), but § 1252(g) still only applied to the three discrete actions its

---

[4] Under the REAL ID Act, Congress added to § 1252(g), "notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision . . . ." *Elgharib v. Napolitano*, 600 F.3d 597, 602 n.3 (6th Cir. 2010).

text explicitly references: the Attorney General's decision to commence proceedings, adjudicate cases, or execute removal orders. *Id.*

Yet, contrary to the *Dia* court's reasoning, nowhere in *Reno* did the Supreme Court suggest that procedural challenges to removal orders fall outside of § 1252(g)'s jurisdictional bar, nor did the Court conclude that such challenges contravene a narrow reading of § 1252(g). After all, the facts of *Reno* did not involve procedural challenges to deportation orders but instead resolved a constitutional claim arguing selective enforcement of removal orders. *Reno*, 525 U.S. at 473–74. Similarly, *Reno* left unaddressed whether procedural challenges to final orders of removal fall within § 1252(g)'s jurisdictional bar that prevents district courts from hearing cases that arise from the Attorney General's decision to "execute" orders of removal. *See id.* at 487. *Hamama*, however, answered the question in the affirmative: the jurisdictional bar does prevent adjudication of such challenges. *See Hamama*, 912 F.3d at 873, 874–75.

Moreover, *Hamama* clearly expanded the reach of *Elgahrib*'s holding that kept § 1252(g) applicable only to the Attorney General's decision to commence proceedings, adjudicate cases, or execute removal orders when it determined that district courts lack jurisdiction to hear procedural claims challenging a removal based on the conditions in a particular country. *Id. Hamama* placed its holding that applied § 1252(g)'s jurisdictional bar to procedural challenges of final orders of removal as an interpretation of a claim "arising from" the Attorney General's decision to "execute removal orders." *See id.* at 874. Indeed, the court there affirmed the district court's

conclusion that it lacked jurisdiction to hear the Iraqi petitioner's procedural challenge related to the changed conditions of Iraq.[5] *Hamama*, 912 F.3d at 874–75. Here, therefore, the Court does not find persuasive the factual distinctions made by the *Dia* court to avoid the authority of *Hamama*. *Hamama* still controls the instant case: Procedural challenges to a final order of removal are challenges to the Attorney General's decision to execute orders of removal and such challenges are within the scope of the jurisdictional bar of § 1252(g). *Reno*, 525 U.S. at 487; *Hamama*, 912 F.3d at 874–75.

As for Rascol's petition, his sought-after procedural relief is a very similar type of relief the Iraqi petitioners sought in *Hamama*. Both are procedural challenges derived from an order of removal, meaning Rascol's petition falls squarely within § 1252(g)'s jurisdictional bar. *Compare Hamama*, 912 F.3d at 873, *with* ECF No. 3, PageID.69, *and* ECF No. 8, PageID.156–157. In other words, Rascol's challenge arose from ICE's decision to execute his final order removal, and under *Hamama*, the Court lacks jurisdiction to hear the claim.[6]

---

[5] One final point that counsels in favor of finding a lack of jurisdiction: as an inferior court, the Court is required to faithfully follow binding circuit precedent. That means that *Hamama* is binding law. And even if a colorable argument exists that *Hamama* expanded *Reno* beyond its most natural reading, especially given *Reno's* narrow construction of § 1252(g), *compare Hamama*, 912 F.3d at 873, 874–75, *with Reno*, 525 U.S. at 483, 487, it is not the Court's duty, nor does it wield the power, to distinguish *Hamama* on what appear to be factual differences of an insignificant degree.

[6] To be sure, Rascol is entitled to certain processes before being removed to a third country. *See* 8 U.S.C. § 1231. And it is far from clear that the Government properly followed the applicable law here, or that DHS's recent guidance is lawful. *See Dia*, 2026 WL 1476507, at *5–*9 (persuasively discussing the merits of the petition and the Government's likely unlawful conduct). The Court's decision here only resolves whether the Court can hear Rascol's challenge. And it cannot under current Sixth

***

While the Court will deny Rascol's emergency motions and conclude it lacks jurisdiction over the corresponding portions of Rascol's petition, it leaves Rascol's Fourth Amendment claim unaffected. Because that claim did not challenge his removal, *see* ECF No. 1, PageID.20–21, it may proceed. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The Court will therefore order the Government to respond to Rascol's petition no later than twenty-one days of the entry of this order.

**WHEREFORE**, it is hereby **ORDERED** that Rascol's emergency motions for a preliminary injunction [3] and to enforce judgment [8] are **DENIED**.

**IT IS FURTHER ORDERED** that Rascol's petition is **DISMISSED** to the extent it seeks to challenge the final order of removal or obtain related procedural relief.

**IT IS FURTHER ORDERED** that the Government must **RESPOND** to the Fourth Amendment claim in Rascol's petition **no later than twenty-one days from the entry of this order**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: October 2, 2026

---

Circuit case law. But still, a different court, namely the Sixth Circuit Court of Appeals, may be able to afford Rascol the procedural relief he sought. *See* 8 U.S.C. § 1252(b)(2).